1  LATHAM & WATKINS LLP
    Jennifer L. Barry (Bar No. 228066)
2     *jennifer.barry@lw.com*
    Patrick C. Justman (Bar No. 281324)
3     *patrick.justman@lw.com*
    Melanie J. Grindle (Bar No. 311047)
4     *melanie.grindle@lw.com*
    12670 High Bluff Drive
5  San Diego, CA 92130
    858.523.5400 / 858.523.5450 Fax
6
    *Attorneys for Defendant*
7  *Perplexity AI, Inc.*

8

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13  PERPLEXITY SOLVED SOLUTIONS INC.,    Case No. 3:25-cv-00989-JSC

14          Plaintiff,                   **PERPLEXITY AI, INC.'S NOTICE OF
                                         MOTION AND MOTION TO DISMISS
15      v.                               CYBERSQUATTING CLAIM**

16  PERPLEXITY AI, INC.,                 Date:  May 29, 2025
                                         Time:  10:00 a.m.
17          Defendant.                   Place:  Courtroom 8, 19th Floor
                                         Judge:  Hon. Jacqueline Scott Corley
18

19

20

21

22

23

24

25

26

27

28

1     **<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>**

2     **TO ALL THE PARTIES, AND THEIR ATTORNEYS OF RECORD**:

3           **PLEASE TAKE NOTICE** that on May 29, 2025 at 10:00 a.m., or as soon thereafter as

4     the matter may be heard, in Courtroom 8 of the United States District Court for the Northern

5     District of California, San Francisco Division, located at 450 Golden Gate Ave., San Francisco,

6     CA 94102, Defendant and Counterclaimant Perplexity AI, Inc. will and does move for an order

7     dismissing Plaintiff Perplexity Solved Solutions Inc.'s claim for cybersquatting (the Third Claim

8     for Relief) in the Complaint (Dkt. 1).  This Motion is made on the grounds that, for the

9     cybersquatting claim, Plaintiff fails to state a claim on which relief may be granted.  *See* Fed. R.

10    Civ. P. 12(b)(6).

11          This Motion is based on this Notice and Motion, the accompanying Memorandum of

12    Points and Authorities, any reply memorandum, the pleadings and papers filed in this action, and

13    such further evidence and argument as the Court may consider.

14

15    Dated: April 2, 2025                          Respectfully submitted,

16

17                                                  /s/ *Jennifer L. Barry*
                                                    Jennifer L. Barry (Bar No. 228066)
                                                      *jennifer.barry@lw.com*
18                                                  Patrick C. Justman (Bar No. 281324)
                                                      *patrick.justman@lw.com*
19                                                  Melanie J. Grindle (Bar No. 311047)
                                                      *melanie.grindle@lw.com*
20                                                  12670 High Bluff Drive
                                                    San Diego, CA 92130
21                                                  858.523.5400 / 858.523.5450 Fax

22                                                  *Attorneys for Defendant*
                                                    *Perplexity AI, Inc.*
23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3      On its face, this case is about Defendant's alleged infringement of Plaintiff's supposed

4  trademark rights purportedly evidenced by a trademark registration for a stylized design mark in

5  Class 42: Perplexity .  In reality, and as described in detail in Defendant's Answer and

6  Counterclaims filed concurrently with this Motion (the "Answer/Counterclaims"), this lawsuit is

7  Plaintiff's thinly-veiled attempt to parlay a fraudulently obtained trademark registration

8  ostensibly covering services that Plaintiff has never actually commercialized into a windfall

9  based on Defendant's innocent adoption and use of its own PERPLEXITY brand in connection

10  with its successful artificial intelligence (AI) based conversational search engine.  All of the

11  claims asserted by Plaintiff are meritless and will fail under scrutiny with the benefit of even the

12  most basic discovery.  Moreover, the trademark registration on which the lawsuit is based is

13  subject to cancellation for the reasons set forth in the Answer/Counterclaims, as discovery will

14  also confirm.  In the meantime, however, and in the interest of narrowing the scope of the

15  disputed issues for discovery, Plaintiff's plainly deficient cybersquatting claim must be

16  dismissed at the outset for failure to state a claim.

17      To state a claim for cybersquatting, Plaintiff's factual allegations must show more than

18  mere alleged trademark infringement.  Rather, Plaintiff must plead facts showing that Defendant

19  registered or used the domain name with "a bad faith intent to profit from [Plaintiff's] mark."

20  15 U.S.C. § 1125(d)(1); *Lahoti v. VeriCheck*, 586 F.3d 1190, 1202 (9th Cir. 2009) ("A finding of

21  bad faith is an essential prerequisite to finding an ACPA violation, though it is not required for

22  general trademark liability.") (internal quotations omitted).  Plaintiff does not—and cannot—

23  meet this pleading standard.  The Complaint does not allege any facts from which bad faith can

24  be plausibly inferred, but instead relies entirely on legal conclusions and the bare, unremarkable,

25  allegation that Defendant registered the *perplexity.ai* domain name only after Plaintiff applied

26  for, and allegedly began using, the Perplexity mark.  These allegations do not even remotely

27  satisfy the bad faith intent pleading requirement under the applicable pleading standards.

28

1    Because Plaintiff has not, and cannot, plead adequate facts to show any bad faith intent to

2    profit by Defendant in registering or using the *perplexity.ai* domain name, Defendant respectfully

3    requests an order dismissing the cybersquatting claim with prejudice.

4    **II.    FACTUAL BACKGROUND**

5    As described in Defendant's Answer/Counterclaims, the true factual background to this

6    dispute diverges significantly from the misleading and incomplete story told in the Complaint.  It

7    is not, however, necessary to point out each of the myriad factual inconsistencies and misleading

8    allegations for purposes of resolving this Motion.  Only a handful of factual allegations are

9    specifically relevant to Plaintiff's cybersquatting claim, which is premised primarily on

10   conclusory statements, devoid of factual details, that merely parrot the legal elements of the

11   claim.  For purposes of this motion, the relevant facts alleged and/or evident from the Complaint

12   are as follows.

13   In May 2021, Plaintiff registered the domain name *perplexityonline.com* and purportedly

14   launched a website at that domain name in August 2021.  Dkt. 1 (Compl.) ¶ 12.  On October 25,

15   2021, Plaintiff filed an application to register the ⊘Perplexity mark (the "Leaf Logo") with the

16   USPTO.  *Id.* ¶ 17.  The application described Plaintiff's services as "software as a service

17   (SAAS) services featuring software for data analytics and UI Testing" in Class 42.  *Id.*  The

18   Complaint does not (and cannot) allege that either the *perplexityonline.com* website, or the

19   trademark application, made any reference whatsoever to AI or any AI-related services.  *See id.*

20   Defendant was founded in 2022, to develop and commercialize "a conversational AI-

21   powered answer engine."  *Id.* ¶ 18.  On July 8, 2022, Defendant registered the *perplexity.ai*

22   domain name.  *Id.* ¶ 22.  Defendant uses the website located at *perplexity.ai* to promote its AI-

23   based search engine and related AI-based services.  *Id.* ¶ 51;[1] *see also perplexity.ai.*[2]  Defendant

24   contacted Plaintiff in September 2023, inquiring about a potential purchase of ***Plaintiff's***

---

25   [1] To be clear, Defendant denies that it offers "Infringing Goods and Services."  *Cf.* Compl. ¶ 51.

26   [2] The *perplexity.ai* website is properly considered with Defendant's motion to dismiss "because
     [it is] referenced in the [complaint]," is "central to Plaintiff's claims," and to Defendant's

27   knowledge, "neither party disputes the authenticity of the website[]."  *LegalForce RAPC
     Worldwide, P.C. v. LegalForce, Inc.*, No. 22-cv-03724, 2023 U.S. Dist. LEXIS 188334, at *12-

28   13 (N.D. Cal. Oct. 18, 2023) (considering websites that "Plaintiff relie[d] on for its
     cybersquatting claim" on motion to dismiss).

1   purported rights in the Leaf Logo, which Plaintiff declined to sell.  Compl. ¶ 27.  Because

2   Defendant knew about Plaintiff's purported trademark rights as of its September 2023 outreach,

3   Defendant is allegedly using its *perplexity.ai* domain name "with knowledge of" Plaintiff's

4   claimed prior rights.  *Id.* ¶ 52.

5   **III.    DISCUSSION**

6          **A.    Cybersquatting Claims Are Regularly Dismissed For Failure To Plead Facts

7                 Showing A Defendant's Alleged Bad Faith Intent To Profit.**

8          To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

9   accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

10  U.S. 662, 678 (2009).  While a court must generally accept allegations as true for purposes of a

11  motion to dismiss, it is "not bound to accept as true a legal conclusion couched as a factual

12  allegation." *Id.*  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by

13  mere conclusory statements, do not suffice." *Id.*

14         To state a cybersquatting claim, a plaintiff must adequately plead facts showing that

15  "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is

16  identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant

17  acted with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213,

18  1218–19 (9th Cir. 2010).  For the third element, the cybersquatting statute (the "ACPA")

19  provides a non-exhaustive lists of factors that a court "may consider" in determining whether a

20  defendant had a "bad faith intent to profit."  15 U.S.C. § 1125(d)(1)(B)(i).  Quintessentially, such

21  bad faith exists when a defendant "registers the domain name of a well known trademark and

22  then attempts to profit from this by either ransoming the domain name back to the trademark

23  holder or by using the domain name to divert business from the trademark holder to the domain

24  name holder." *Bosley Medical Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005).  But,

25  ultimately, a plaintiff must plead (and ultimately prove) bad faith based on "the unique

26  circumstances of the case." *Lahoti*, 586 F.3d at 1202.

27         These general pleading principles, coupled with the strict elements and "narrow" scope of

28  the ACPA, render cybersquatting claims particularly susceptible to dismissal for failure to state a

1    claim.  *See Children's Miracle Network v. Miracles for Kids, Inc.*, No. 8:18-cv-01227, 2018 U.S.

2    Dist. LEXIS 225676, at *15–16 (C.D. Cal. Dec. 6, 2018) (describing "narrow" scope of ACPA

3    and dismissing cybersquatting claim based only on "legal conclusion[s]" and "a bare allegation

4    that Defendant was aware of the similarities in the [parties'] marks when it registered the

5    website"); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 110 F. Supp. 2d 420, 426

6    (E.D. Va. 2000) ("As the House Conference Committee explained:  *The bill is carefully and*

7    *narrowly tailored, however, to extend only to cases* where the plaintiff can demonstrate that the

8    defendant registered, trafficked in, or used the offending domain name *with bad-faith intent to*

9    *profit* from the goodwill of a mark belonging to someone else.") (emphasis in original).

10        Indeed, cybersquatting claims are routinely dismissed for failure to state a claim by courts

11   throughout this District and Circuit.  *See, e.g.*, *Telligen, Inc. v. Telligens Techs., LLC*,

12   No. 2:24-cv-03935, 2025 U.S. Dist. LEXIS 3191, at *15–16 (C.D. Cal. Jan. 7, 2025); *Children's*

13   *Miracle Network*, 2018 U.S. Dist. LEXIS 225676, at *15–16; *Lusida Rubber Prods., Inc. v.*

14   *Point Indus., LLC*, No. 15-cv-08677, 2016 WL 7469587, at *7–8 (C.D. Cal. Nov. 28, 2016).

15        **B.    <u>Plaintiff Fails To Allege Facts Showing Any Bad Faith Intent To Profit.</u>**

16        In its Complaint, Plaintiff does not—and cannot—allege facts showing that Defendant

17   registered or used the *perplexity.ai* domain name with the bad faith intent to profit from

18   Defendant's claimed prior rights or ostensible existing goodwill in the Leaf Logo.  At most, the

19   Complaint alleges that (1) Plaintiff's trademark application and domain name registration pre-

20   dated Defendant's registration of the *perplexity.ai* domain (*see* Compl. ¶¶ 12, 17, 22); and

21   (2) Defendant had knowledge of Plaintiff's purported trademark rights by September 2023 (*see*

22   *id.* ¶ 27).  But the law is clear that mere ***knowledge*** of potentially applicable prior rights falls

23   well short of ***bad faith intent to profit*** off those rights.  *See, e.g.*, *Children's Miracle Network*,

24   2018 U.S. Dist. LEXIS 225676, at *16 ("Even assuming that Defendant was aware of Plaintiff's

25   mark when it registered the website, this would be insufficient to prove that Defendant had a bad

26   faith intent to profit off of the mark."); *see also Xen, Inc. v. Citrix Sys.*, No. 11-cv-09568, 2012

27   U.S. Dist. LEXIS 153787, *17 (C.D. Cal. Oct. 25, 2012) ("Mere knowledge of a claimant's

28   trademark is insufficient for proving bad faith generally in trademark law.").

1    Plaintiff did not even attempt to plead facts relating to, much less establishing the

2    applicability of, any of the nine bad faith factors enumerated in the ACPA.  *See* 15 U.S.C.

3    § 1125(d)(1)(B)(i); *see also Children's Miracle Network*, 2018 U.S. Dist. LEXIS 225676, at

4    *15–16 ("Plaintiff's Complaint fails to address *any* of the factors listed in the statute, much less

5    any 'unique circumstances' that could prove bad faith with an intent to profit.") (emphasis in

6    original).  Instead, Plaintiff attempts to buttress its legally insufficient "knowledge" allegations

7    with only conclusory statements that simply repeat verbatim the relevant legal conclusions.

8    *Compare* Compl. ¶ 52 ("Defendant registered and/or is using the Infringing Domain Name in

9    bad faith, with knowledge of Perplexity's prior rights in the PERPLEXITY Mark and an intent to

10   overwhelm and divert traffic from Perplexity's websites.") *with Bosley*, 403 F.3d at 680

11   (recognizing bad faith intent to profit may exist when evidence shows intent "to divert business

12   from the trademark holder to the domain name holder") (citation omitted).  Such conclusory

13   allegations, devoid of factual support, are plainly insufficient to withstand dismissal.  *See, e.g.*,

14   *Children's Miracle Network*, 2018 U.S. Dist. LEXIS 225676, at *15–16 (dismissing

15   cybersquatting claim where "Plaintiff plead[ed] only a legal conclusion — that Defendant had a

16   bad faith intent to profit — along with a bare allegation that Defendant was aware of the

17   similarities in the charities' marks when it registered the website"); *Telligen*, 2025 U.S. Dist.

18   LEXIS 3191, at *15 (dismissing cybersquatting claim and concluding "Plaintiff has pleaded only

19   a legal conclusion—i.e., that Defendant had a bad faith intent to profit, which is considered a

20   'terms of art in the ACPA and hence should not necessarily be equated with 'bad faith' in other

21   contexts'"); *Coast Law Grp. v. Panagiotou*, No. 12-cv-01446, 2013 U.S. Dist. LEXIS 199773, at

22   *16 (S.D. Cal. Mar. 28, 2013) ("Plaintiff, however, concludes Defendant acted with 'a bad faith

23   intent,' but fails to support that conclusion with factual allegations.").

24   In fact, the only plausible inference to draw from the allegations in the Complaint is the

25   ***absence*** of an intent to profit off of Defendant's mark.  Far from holding the *perplexity.ai*

26   domain name hostage and attempting to "ransom[] the domain name back" to Plaintiff (*Bosley*,

27   403 F.3d at 680 (citation omitted)), the Complaint confirms that Defendant did virtually the

28   opposite—i.e., Defendant was ***not*** interested in selling its domain to Plaintiff, but rather

1    allegedly offered to purchase **Plaintiff's** alleged prior rights.  *See* Compl. ¶ 27; *cf. Xen*, 2012

2    U.S. Dist. LEXIS 153787, at *21 (emphasizing lack of evidence and allegations regarding bad

3    faith factors "to illustrate the point that not only has [claimant] failed to produce evidence of a

4    bad faith intent, the available evidence generally points to the opposite conclusion").

5        In short, Plaintiff has not, and cannot, allege facts sufficient to plausibly infer that

6    Defendant registered or used the *perplexity.ai* domain name with the bad faith intent to profit

7    from Plaintiff's alleged prior rights in the Leaf Logo.  Because bad faith intent to profit is a

8    necessary element of a cybersquatting claim, Defendant's claim should be dismissed.  Moreover,

9    because any attempt to amend the claim would be futile, the Court should dismiss Plaintiff's

10    cybersquatting claim with prejudice.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981,

11    1007 (9th Cir. 2009).

12 **IV.      CONCLUSION**

13        For these reasons, Defendant requests that the Court dismiss Plaintiff's cybersquatting

14    claim with prejudice.

15 Dated:  April 2, 2025            Respectfully submitted,

16                              */s/ Jennifer L. Barry*
                              Jennifer L. Barry (Bar No. 228066)

17                               *jennifer.barry@lw.com*
                              Patrick C. Justman (Bar No. 281324)

18                               *patrick.justman@lw.com*
                              Melanie J. Grindle (Bar No. 311047)

19                               *melanie.grindle@lw.com*
                              12670 High Bluff Drive

20                               San Diego, CA 92130
                              858.532.5400 / 858.523.5450 Fax

21

22                               *Attorneys for Defendant*
                              *Perplexity AI, Inc.*

23

24

25

26

27

28