ELEANOR M. LACKMAN (SBN 298594)
eml@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

MARISSA B. LEWIS (*pro hac vice*)
mbl@msk.com
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

Attorneys for Plaintiff and Counterclaim-Defendant
Perplexity Solved Solutions, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Perplexity Solved Solutions Inc.,<br><br>        Plaintiff,<br><br>    v.<br><br>Perplexity AI, Inc.,<br><br>        Defendant. | Case No. 3:25-cv-00989-JSC<br><br>**PERPLEXITY SOLVED SOLUTIONS INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PERPLEXITY AI, INC.'S MOTION TO DISMISS CYBERSQUATTING CLAIM**<br><br>Hearing date:   June 5, 2025<br>Time:             10:00 a.m.<br>Place:            Courtroom 8, 19th Floor<br>Judge:           Hon. Jacqueline Scott Corley |
| Perplexity AI, Inc.,<br><br>        Counterclaim-Plaintiff,<br><br>    v.<br><br>Perplexity Solved Solutions Inc.,<br><br>        Counterclaim-Defendant. | |

## I.   INTRODUCTION AND FACTUAL BACKGROUND

For years, Perplexity Solved Solutions Inc.'s ("Plaintiff") owner and founder has worked tirelessly to build a successful business and brand under the highly distinctive name PERPLEXITY and variations thereof (collectively, "Plaintiff's Mark"). *See* Dkt. No. 1 ("Complaint" or "Compl.") ¶¶ 2, 10. Plaintiff has invested substantial resources in developing and promoting its business and software solutions under Plaintiff's Mark, including through its websites *perplexityonline.com* and *perplexitymeet.com*, which Plaintiff launched in 2021. *Id.* ¶¶ 11-12.

On or about July 8, 2022, Perplexity AI, Inc. ("Defendant")—a sophisticated, Silicon Valley-based tech company valued at billions of dollars—registered the domain name *perplexity.ai*. *Id.* ¶¶ 18, 22. The domain name not only incorporates Plaintiff's Mark in its entirety, but also resolves to a website that prominently features Plaintiff's Mark in conjunction with a related software product. *Id.* ¶¶ 22, 50-51. In September 2023, Plaintiff declined Defendant's proposal to purchase Plaintiff's Mark. *Id.* ¶ 27. In October 2024, Plaintiff demanded that Defendant cease and desist from all use of Plaintiff's Mark. *Id.* ¶ 28. Rather than stop, Defendant doubled down, continuing to exploit Plaintiff's Mark—including in the *perplexity.ai* domain name—to compete with and harm Plaintiff's business. To protect itself and the public from confusion, Plaintiff filed this lawsuit, asserting various trademark-related claims against Defendant. *Id.* ¶ 4 (identifying six claims).

Defendant's Motion to Dismiss (Dkt. No. 18) ("Motion" or "Mot.") distorts both the law and the allegations in the Complaint. Tellingly, Defendant challenges only one of Plaintiff's claims—for Cybersquatting in Violation of the Anticybersquatting Consumer Protection Act ("ACPA") (the "Cybersquatting Claim")—and only on one narrow ground: a purported failure to allege that Defendant acted with the requisite "bad faith intent to profit" from Plaintiff's Mark. As discussed below, Plaintiff's Complaint more than adequately alleges the requisite bad faith. Accordingly, the Court should deny Defendant's Motion.

## II. THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CYBERSQUATTING CLAIM

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding whether to dismiss a claim under Rule 12(b)(6), courts must "accept all well-pleaded factual allegations as true, and construe them in the light most favorable to" the plaintiff. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (citations omitted). At the motion to dismiss stage, courts do not evaluate whether the allegations will be proven true; they merely ask whether the pleadings, if proven, would support a plausible claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Defendant's Motion pertains solely to Plaintiff's Cybersquatting Claim. As Defendant correctly acknowledges, "[t]o state a cybersquatting claim, a plaintiff must adequately plead facts showing that '(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark.'" Mot. at 3 (quoting *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010)). Defendant does not, and cannot, dispute that Plaintiff has adequately pleaded the first and second elements. Its entire argument for dismissal hinges on the third element—*i.e.*, whether Defendant registered and/or is using the *perplexity.ai* domain name with "bad faith intent to profit" from Plaintiff's Mark. As discussed below, Plaintiff has adequately pleaded "bad faith intent to profit," and the Court should deny Defendant's Motion.

### A. "Bad Faith Intent" Is Inappropriate For Resolution On A Motion To Dismiss.

As a threshold matter, whether Defendant acted with a "bad faith intent to profit" from Plaintiff's Mark is an intensely factual issue that is inappropriate for resolution on a motion to dismiss. As Defendant correctly acknowledges, the ACPA provides a "***non-exhaustive*** list[] of [***nine***] ***factors*** that a court 'may consider' in determining whether a defendant had a 'bad faith intent to profit,'" but "ultimately," the issue should be determined based on the "***unique circumstances*** of the case." Mot. at 3 (citations omitted and emphasis added). Notably, "[e]vidence of bad faith may

arise well after registration of the domain name." *DSPT Int'l*, 624 F.3d at 1219-20 (citation omitted).

Because "bad faith intent to profit" requires such a fact-intensive analysis, courts in the Ninth Circuit routinely have denied motions to dismiss cybersquatting claims on this basis. *See, e.g.*, *Mira Holdings Inc. v. UHS of Del. Inc.*, 2023 WL 5333262, at *8 (D. Ariz. Aug. 18, 2023) (denying motion to dismiss cybersquatting claim; "Although the [c]ourt agrees with [d]efendant that [p]laintiff 'could have provided greater detail,' [d]efendant invites the [c]ourt engage in a fact-intensive analysis of [p]laintiff's alleged bad faith intent to profit from [d]efendant's mark that is inappropriate on a motion to dismiss under Rule 12(b)(6).") (citation omitted); *Renovation Realty, Inc. v. Esplanade*, 2013 WL 12114628, at *2 (S.D. Cal. May 9, 2013) (denying motion to dismiss cybersquatting claim; "Whether [d]efendant *actually* had 'bad faith intent'—as defined in [the ACPA]—is a factual matter not properly before the court at this stage of the proceedings."); *Pala Invs. Holdings Ltd. v. Alderox Canada Inc.*, 2011 WL 13227782, at *3 (C.D. Cal. May 23, 2011) (denying motion to dismiss cybersquatting claim; "[w]hether [d]efendants acted in bad faith … is an issue of fact that needs to be assessed through discovery"); *Reinalt-Thomas Corp. v. AKH Co., Inc.*, 2011 WL 13227808, at *2 (C.D. Cal. Feb. 9, 2011) (denying motion to dismiss cybersquatting claim; "Although [plaintiff] may not be able to prove, as a matter of law, that [defendant] acted with bad faith intent [under the ACPA] …, that question is more properly resolved on a motion for summary judgment.") (citations omitted).

### B.   The Complaint Alleges Facts Sufficient To Show "Bad Faith Intent."

In any event, the Complaint alleges numerous facts reflecting Defendant's "bad faith intent to profit" from its use of Plaintiff's Mark in the *perplexity.ai* domain name. For example, the Complaint alleges that Defendant, without authorization from Plaintiff, registered the *perplexity.ai* domain name (Compl. ¶¶ 22, 50)—which contains Plaintiff's highly distinctive PERPLEXITY Mark in its entirety (*id.* ¶¶ 14-16), is confusingly similar to Plaintiff's own domain names *perplexityonline.com* and *perplexitymeet.com* (*id.* ¶¶ 12, 50), and resolves to a website that prominently features Plaintiff's Mark (*id.* ¶¶ 22, 51) in conjunction with similar software (*id.* ¶¶ 21,

51). Far more than "mere knowledge" of Plaintiff's Mark (Mot. at 4), the Complaint alleges that, in September 2023, Defendant went so far as to contact Plaintiff to inquire about purchasing Plaintiff's Mark that forms the entirety of the second-level domain name *perplexity.ai*. *See* Compl. ¶ 27. Even after Plaintiff declined to sell and demanded that Defendant cease and desist, Defendant continued using Plaintiff's Mark and the *perplexity.ai* domain name (*id.* ¶¶ 27-28) with the "deliberate intention" of causing confusion among consumers (*id.* ¶ 39) and "push[ing] [Plaintiff] out of the market" (*id.* ¶¶ 26, 57). Based on these facts, the Complaint further alleges that "Defendant registered and/or is using the Infringing Domain Name in bad faith, with knowledge of [Plaintiff's] prior rights in the PERPLEXITY Mark and an intent to overwhelm and divert traffic from [Plaintiff's] websites." *Id.* ¶ 52.

The foregoing allegations are more than sufficient to plead "bad faith intent to profit" and avoid dismissal of Plaintiff's Cybersquatting Claim. *See, e.g.*, *Intel Corp. v. Americas News Intel. Publ'g., LLC*, 2010 WL 2740063, at *6 (N.D. Cal. Jul. 12, 2010) (finding plaintiff adequately pleaded "bad faith intent to profit" and denying motion to dismiss cybersquatting claim, based on "allegation that [defendant's] websites prominently feature[d] [plaintiff's] trademarks and products, combined with the fact that [defendant's] domain names use[d] and emphasize[d] the term 'intel'") (citation omitted); *CTF Dev., Inc. v. Penta Hospitality, LLC*, 2009 WL 2524476, at *3 (N.D. Cal. Aug. 17, 2009) (same, based on allegations that "'[d]efendant's bad faith intent to profit from use of [plaintiff's] name in its website constitutes [] cyberpiracy,' '[d]efendant had actual or constructive knowledge of [plaintiff's] trademark rights prior to using, or continuing to use [plaintiff's mark],' and '[d]efendant's use of the [m]ark [was] being conducted with the intent to deceive the public into believing [d]efendant's services are affiliated with [plaintiff]'") (internal citations omitted); *Renovation Realty*, 2013 WL 12114628, *2 (same, based on allegation that defendant's domain name "divert[ed] consumers away from [p]laintiff's website and continue[d] to harm [] the goodwill and reputation for quality services represented by [plaintiff's] [r]egistered [t]rademarks … by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement") (internal citation omitted).

4

**OPPOSITION TO MOTION TO DISMISS CYBERSQUATTING CLAIM**

### C. Defendant's Arguments and Authorities Are Inapposite.

All of Defendant's arguments and authorities cited in support of dismissal are inapposite.

***First***, Defendant argues that "cybersquatting claims are routinely dismissed for failure to state a claim by courts throughout this District and Circuit." Mot. at 4 (collecting cases). This is misleading at best. Indeed, Defendant does not cite a single case in this District, and all three of the cases cited for this point are distinguishable. *See Telligen, Inc. v. Telligens Techs., LLC*, 2025 U.S. Dist. LEXIS 3191, at **15-16 (C.D. Cal. Jan. 7, 2025) (dismissing cybersquatting claim where, unlike here, plaintiff "pleaded only a legal conclusion" and "fail[ed] to address any of the factors listed in the statute"); *Children's Miracle Network v. Miracles for Kids, Inc.*, 2018 WL 8243998, at *6 (C.D. Cal. Dec. 6, 2018) (same, where, unlike here, plaintiff "plead[ed] only a legal conclusion—that [d]efendant had a bad faith intent to profit—along with a bare allegation that [d]efendant was aware of the similarities in the charities' marks when it registered the website," and "fail[ed] to address *any* of the factors listed in the statute") (citations omitted); *Lusida Rubber Prod., Inc. v. Point Indus., LLC.*, 2016 WL 7469587, at **7-8 (C.D. Cal. Nov. 28, 2016) (same, where, unlike here, plaintiff "allege[d] no specific facts beyond [] conclusory allegations (which largely track[ed] the elements of a claim under the [ACPA])" for all three elements of the cybersquatting claim).[1]

***Second***, Defendant argues that "Plaintiff did not even attempt to plead facts relating to… any of the nine bad faith factors enumerated in the ACPA." Mot. at 5 (citations omitted). This is wrong. The Complaint addresses at least two of these factors, including whether the defendant "inten[ded] to divert consumers from [the plaintiff's] online location" to its own site "by creating a

---

[1] The other cases cited in Defendant's Motion also are distinguishable and, if anything, support Plaintiff's position that its Cybersquatting Claim should survive this Motion. *See, e.g.*, *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005) (finding "the district court erred in granting summary judgment for [the defendant] on the ACPA [cybersquatting] claim" because the court "did not give [the plaintiff] an opportunity to conduct discovery on the issue"); *Coast Law Grp. V. Panagiotou*, 2013 U.S. Dist. LEXIS 199773, at *16 (S.D. Cal. Mar. 28, 2023) (dismissing cybersquatting claim where, unlike here, the plaintiff made "conclu[sory]," "bare allegations" that the defendant "acted with 'a bad faith intent,' but fail[ed] to support that conclusion with factual allegations"); *Xen, Inc. v. Citrix Sys.*, 2012 U.S. Dist. LEXIS 153787, at *17 (C.D. Cal. Oct. 25, 2012) (rejecting cybersquatting counterclaim on summary judgment where, unlike here, the counterclaim-plaintiff had "only scant evidence that [the counterclaim-defendant] was aware of [its] XEN mark" and "not only … failed to produce evidence of a bad faith intent, [but] the available evidence generally point[ed] to the opposite conclusion").

likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site[,]" 15 U.S.C. § 1125(d)(1)(B)(i)(V), and the extent to which the plaintiff's mark is "distinctive and famous," *id.* § 1125(d)(1)(B)(i)(IX). *See, e.g.*, Compl. ¶¶ 39, 52 (alleging Defendant "inten[ded] to … divert traffic from [Plaintiff's] websites" and "used the PERPLEXITY Mark … with deliberate intention to cause mistake and confuse or deceive the general public as to the affiliation, connection, or association of Defendant … with [Plaintiff]"); *see also e.g.*, *id.* ¶¶ 14-15 (alleging Plaintiff's Mark is "highly distinctive," "conceptually strong," and has attained "considerable goodwill" and "[c]onsumer[] recogni[tion]"). Notably, allegations that address only "one of the nine factors" have been held "sufficient facts to state a plausible claim that [the defendant] acted with bad faith." *Reinalt-Thomas*, 2011 WL 13227808, at *2 (internal citations omitted).

***Third***, Defendant argues that Plaintiff's allegations of "bad faith intent to profit" are "conclusory" and "devoid of factual support." Mot. at 5 (collecting cases). This argument focuses on a single allegation—particularly, that "Defendant registered and/or is using the [*perplexity.ai* domain name] in bad faith, with knowledge of [Plaintiff's] prior rights in the PERPLEXITY Mark and an intent to overwhelm and divert traffic from [Plaintiff's] websites" (Compl. ¶ 52)—and ignores the rest of the Complaint. In any event, "[a]t least one appellate court has held that such an allegation suffices to defeat a Rule 12(b)(6) motion." *Rolex Watch U.S.A., Inc. v. Agarwal*, 2012 WL 12886444, at *13–14 (C.D. Cal. Dec. 17, 2012) (citing *Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1308-09 (11th Cir. 2009) ("Appellants assert that the complaint did not allege they had a bad faith intent to profit from the mark as required by § 1125(d)(1)(A)(i). Paragraph 53, however, states 'Upon information and belief, [d]efendants continue to use the domain names with the bad faith intent of profiting unlawfully from [plaintiff's] trademarks.' The complaint thus alleged a bad faith intent to profit from the mark")).

***Finally***, Defendant seeks to drastically limit the ACPA to only the "[q]uintessential[]" harm of when a defendant "attempts to profit" by "holding the [ ] domain name hostage" and "ransoming the domain name back to the trademark holder." Mot. at 3, 5 (citing *Bosley*, 403 F.3d at 680). Defendant's argument has been squarely rejected by the Ninth Circuit: "[T]he statute, like so many,

1  is written more broadly than what may have been the political catalyst that got it passed," and it is
2  "the words of the statute" that govern rather than whether a defendant's conduct falls within the
3  "paradigmatic harm" that prompted ACPA's passage. *DSPT Int'l*, 624 F.3d at 1218-19. Moreover,
4  in *Bosley*, the Ninth Circuit declined to elevate a single bad faith factor—here, ransoming—into a
5  mandatory precondition to a cybersquatting claim. *See Bosley*, 403 F.3d at 681. For these reasons,
6  Defendant's challenge to Plaintiff's Cybersquatting Claim fails.

7  **III.   IN THE ALTERNATIVE, THIS COURT SHOULD GRANT LEAVE TO AMEND**

8  Plaintiff believes that its Cybersquatting Claim is adequately pleaded and should survive this
9  Motion to Dismiss. However, if the Court concludes that Defendant's Motion should be granted,
10 Plaintiff respectfully requests that the Court grant it leave to amend its Complaint. In the Ninth
11 Circuit, when a claim is dismissed under Rule 12(b)(6), the "district court should grant leave to
12 amend… unless it determines that the pleading could not possibly be cured by the allegation of other
13 facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations omitted). Indeed, the Federal
14 Rules provide that "leave to amend shall be freely given when justice so requires," Fed. R. Civ. P.
15 15(a), and the policy in favor of amendment should be applied with "extreme liberality." *Moss v.*
16 *U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted). Defendant offers no
17 explanation for its assertion that an amendment "would be futile" and the only case it cites is
18 distinguishable. Mot. at 6 (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th
19 Cir. 2009), which affirmed the district court's denial of leave to amend "where the plaintiff ha[d]
20 previously been granted leave to amend").

21 **IV.   CONCLUSION**

22 For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Cybersquatting Claim
23 should be denied. Alternatively, Plaintiff respectfully requests leave to amend its Complaint.

24 DATED: April 24, 2025                    MITCHELL SILBERBERG & KNUPP LLP

25

26                                          By:   /s/ Marissa B. Lewis
                                                  Marissa Lewis, Esq. (*pro hac vice*)
27                                                Attorneys for Plaintiff and Counterclaim-
                                                  Defendant Perplexity Solved Solutions, Inc.
28