United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PERPLEXITY SOLVED SOLUTIONS, INC.,

   Plaintiff,

  v.

PERPLEXITY AI, INC.,

   Defendant.

PERPLEXITY AI, INC.,

   Counterclaimant-Plaintiff,

  v.

PERPLEXITY SOLVED SOLUTIONS, INC.,

   Counterclaim-Defendant.

Case No.  25-cv-00989-JSC

**ORDER RE: DEFAULT JUDGMENT**

Re: Dkt. No. 75

Perplexity Solved Solutions, Inc. ("PSSI") sues Perplexity AI, Inc. ("Perplexity") for trademark infringement, and Perplexity counterclaims for cancellation of PSSI's trademark registration.  (Dkt. Nos. 1, 23.)[1]  The Court previously granted Perplexity's motions to strike PSSI's answer to its counterclaims and enter default, and to dismiss PSSI's claims with prejudice. (Dkt. No. 70.)  Perplexity now moves for default judgment on its counterclaims.  (Dkt. No. 75.) Although PSSI has not responded, the Court has carefully considered Perplexity's submission, concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS Perplexity's motion.  Six of seven *Eitel* factors weigh in favor of entering default judgment against

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

PSSI on Perplexity's counterclaims.  Perplexity has also alleged cancellation of U.S. Trademark Registration 6,906,290 is proper.

**BACKGROUND**

**I.    PROCEDURAL HISTORY**

In January 2025, PSSI sued Perplexity for (1) trademark infringement under Lanham Act § 32(1), 15 U.S.C. § 1114(1); (2) unfair competition and false design of origin under Lanham Act § 43(a), 15 U.S.C. § 1125(a); (3) cybersquatting under Lanham Act § 43(d), 15 U.S.C. § 1125(d); (4) unfair business practices under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (5) common law trademark infringement and unfair competition; and (6) declaratory judgment under Lanham Act § 2(d), 15 U.S.C. § 1052(d).  (Dkt. No. 1.)  PSSI alleged its owner Dawn Gallman Mobley "has worked tirelessly to build a successful business and brand under the name PERPLEXITY and variations thereof (collectively, 'the PERPLEXITY Mark')," which it registered with the U.S. Patent and Trademark Office ("USPTO") in 2022.  (*Id.* ¶ 2.)  However, according to PSSI, Perplexity has been "using the PERPLEXITY Mark in connection with highly similar software-related goods and services."  (*Id.* ¶ 3.)

Perplexity first moved to dismiss PSSI's cybersquatting claim, and the Court granted Perplexity's motion.  (Dkt. Nos. 18, 42.)  Perplexity also answered PSSI's complaint and counterclaimed for cancellation of U.S. Trademark Registration No. 6,906,290 (the "'290 Registration") for PSSI's leaf logo based on (1) fraud on the USPTO under 15 U.S.C. §§ 1115(b)(1) and 1119, and (2) for abandonment under 15 U.S.C. §§ 1064(3) and 1119.  (Dkt. No. 23.)  PSSI answered the counterclaims.  (Dkt. Nos. 34, 40.)

However, on July 18, 2025, Mitchell Silberberg & Knupp LLP and its individual attorneys Eleanor M. Lackman and Marissa B. Lewis moved to withdraw as PSSI's counsel.  (Dkt. No. 50.) Ms. Lewis declared because "there ha[d] been an irreparable breakdown in the attorney-client relationship and that [her] firm [could not] continue to effectively represent [PSSI]," "professional considerations require[d] termination of the representation and the situation [wa]s one in which withdrawal is appropriate."  (Dkt. No. 50-1 ¶ 5.)  She also attested that on June 20, 2025, she advised PSSI it would have to obtain substitute counsel because a corporation cannot represent

United States District Court
Northern District of California

United States District Court
Northern District of California

itself in federal court.  (*Id.* ¶ 3.)

On August 5, 2025, the Court granted the motion to withdraw "'subject to the condition that papers may continue to be served on counsel for forwarding purposes' until [PSSI] retain[ed] new counsel."  (Dkt. No. 53 at 2 (quoting N.D. Cal. Civ. L.R. 11-5(b)).)  The Court warned PSSI because it is a corporation, which "'may appear in the federal courts only through licensed counsel,'" "failure to retain substitute counsel may result in the entry of default judgment on counterclaims against it . . . and dismissal of its action against [Perplexity]."  (*Id.* at 2-3 (quoting *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993)).)  So, the Court granted PSSI "an additional 30 days to acquire new counsel" and ordered PSSI's new counsel to "make an appearance by September 5, 2025."  (*Id.* at 3.)  Because no attorney had made an appearance for PSSI by September 11, 2025, the Court continued its September 17, 2025 case management conference.  (Dkt. No. 57.)  In its continuance order, the Court again explained "[PSSI] is a corporation" and cannot appear without licensed counsel, and noted "[Perplexity] may take whatever steps it deems appropriate."  (*Id.* at 1-2.)  In addition, on October 9, 2025, the Court denied Dawn Gallman Mobley's request for a continuance of court proceedings because she had not yet obtained counsel for PSSI.  (Dkt. No. 66.)  The Court reiterated its prior warning "if no new counsel appeared in this action, [PSSI's] claims would have to be dismissed, and [PSSI's] default could be entered on [Perplexity's] counterclaims."  (*Id.* at 1.)

Perplexity then moved to strike PSSI's answer to its counterclaims and direct entry of default, and to dismiss PSSI's claims with prejudice.  (Dkt. Nos. 60, 61.)  The Court granted both motions.  (Dkt. No. 70.)  Perplexity now moves for default judgment on its counterclaims.  (Dkt. No. 75.)

## II.    COUNTERCOMPLAINT ALLEGATIONS

On October 25, 2021, PSSI applied to the USPTO to register its "Leaf Logo" for "Software as a service (SAAS) services featuring software for data analytics and UI Testing."  (Dkt. No. 23 at 20.)  Because PSSI filed its application based on actual use under 15 U.S.C. § 1051(a), PSSI submitted a declaration attesting the Leaf Logo was presently in use in commerce, as well as a specimen purporting to show the Leaf Logo in use on the perplexityonline.com website.  (*Id.* at

20-22.)  The USPTO granted PSSI's application and issued the '290 Registration.  (*Id.* at 22.)

However, PSSI's declaration "the Leaf Logo 'is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application'" was false.  (*Id.*)  PSSI's submitted specimen was also "fraudulent" because it "did not show the mark being used with any actual goods or services—let alone the applied-for services in the application."  (*Id.* at 23.)  Instead, the specimen "only showed a couple snippets of an inactive website that allegedly existed and was used by PSSI," without any "indication of the goods or services that were allegedly offered under the Leaf Logo."  (*Id.*)  Furthermore, because PSSI "knew that its website was not functional and did not contain any actual content, and that it was not using the Leaf Logo to offer any goods or services," PSSI "knew that it was making fraudulent statements to the USPTO."  (*Id.*)

In addition, for many years, PSSI did not "meaningfully change" its website "to display any *bona fide* offering of services" or "disseminate any *bona fide* advertisements in connection with its services."  (*Id.*)  Instead, "PSSI's website and social media pages remained materially unchanged (and nonfunctional) until the eve of this lawsuit."  (*Id.* at 24.)  However, PSSI "rebranded in the lead-up to filing its lawsuit against [Perplexity]."  (*Id.* at 26.)  "[A]t least as early as October 2024," PSSI replaced the Leaf Logo "with a new logo featuring a stylized design of the letter 'P' paired with a new version of the stylized word 'PERPLEXITY' ('P Logo')" across all its websites and social media accounts.  (*Id.*)  However, "[t]he current version of PSSI's website suffers from similar sham hyperlinks as its old sites," and its "social media pages fare no better."  (*Id.* at 27-28.)

"If PSSI is permitted to maintain the '290 Registration, its Leaf Logo will be entitled to legal presumptions of validity, ownership, and exclusivity of use in the United States, which have been asserted against [Perplexity] in this lawsuit."  (*Id.* at 33.)

**DISCUSSION**

After entry of default, a party may apply to the court for default judgment.  *See* Fed. R. Civ. P. 55(b)(2).  In considering default judgment, "well-pled allegations in the complaint regarding liability are deemed true," and "[t]he district court is not required to make detailed

United States District Court
Northern District of California

findings of fact." *See Fair Hous. Of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (citations omitted).  However, the court must ensure subject matter jurisdiction, personal jurisdiction, and service of process before rendering judgment against the non-moving party.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008).  The court then employs the *Eitel* factors to decide if default judgment is appropriate.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## I.    JURISDICTION AND SERVICE OF PROCESS

When presented with a motion for default judgment, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli,* 172 F.3d at 712.  The court must also "assess the adequacy of service of process on the party against whom default is requested." *Penpower Tech. Ltd.*, 627 F. Supp. 2d at 1088 (cleaned up).  "Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross,* 504 F.3d 1130, 1138-39 (9th Cir. 2007) (citations omitted).

The Court has federal question subject matter jurisdiction because Perplexity counterclaims under the federal Lanham Act, specifically 15 U.S.C. §§ 1115(b)(1), 1064(3), and 1119. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The Court also has personal jurisdiction because PSSI initiated suit as a plaintiff in this Court and continued litigating following Perplexity's counterclaims.  *See AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, Nos. 20-CV-08624-LHK, 20-CV-08626-LHK, 20-CV-08627-LHK, 2021 WL 2719264, at *4-5 (N.D. Cal. July 1, 2021) (explaining because the "Plaintiff has invoked the jurisdiction of the Court," "[t]he Court has personal jurisdiction over Plaintiffs" to adjudicate counterclaims); *see also Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932) ("When the respondent brought suit in the [court], it submitted itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants.").  And PSSI waived any challenges to service of process by answering Perplexity's countercomplaint.

(Dkt. Nos. 34, 40.)  *See DePrins v. Clark*, 566 F. App'x 608, 610 (9th Cir. 2014) ("[A] party waives service of process when it files an answer to the complaint.").  Perplexity also served its motion for default judgment upon PSSI's former counsel on December 18, 2025 pursuant to N.D. Cal. Civil Local Rule 11-5(b) and this Court's August 5, 2025 Order.  (Dkt. No. 75 at 25.)  *See* Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.").

So, because there is subject matter jurisdiction, personal jurisdiction, and adequate service of process, the Court can enter default judgment against PSSI.

## II.   DEFAULT JUDGMENT

Courts consider the following factors in deciding whether to enter a default judgment:

> (1) [T]he possibility of prejudice to the plaintiff;
> (2) the merits of [the] plaintiff's substantive claims;
> (3) the sufficiency of the complaint;
> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect; and
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.  Ultimately, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (citations omitted).  The Court considers each *Eitel* factor.

### A.   Possibility of Prejudice to Perplexity

As to the first *Eitel* factor, "the Court considers whether and to what extent [Perplexity] will suffer prejudice, such as being left without a legal remedy, if the Court declines to grant default judgment." *Blackhawk Network, Inc. v. Computer Servs., Inc.*, No. 3:23-MC-80303-JSC, 2024 WL 4476658, at *3 (N.D. Cal. Oct. 11, 2024) (citation omitted).  As the Court previously stated, PSSI's "inability to retain counsel and therefore to participate in litigation it initiated has made it impossible for [Perplexity] to adequately prepare itself for trial and litigate this case to its conclusion."  (Dkt. No. 70 at 5 (cleaned up).)  So, Perplexity will be left without a legal remedy if the Court does not grant default judgment. *See Maverick Bankcard, Inc. v. Assets Before*

United States District Court
Northern District of California

*Splurging, LLC*, No. 2:21-CV-09855-SSS-MARx, 2023 WL 12037766, at *2 (C.D. Cal. Aug. 8, 2023) ("Because . . . [the defendant] has neglected to retain counsel or otherwise participate in this matter since its counsel withdrew, it is apparent [the plaintiff] will be left without recourse if its motion is denied."); *see also ISA Plus, LLC v. Prehired, LLC*, No. 3:22-CV-01211-JAH-JLB, 2024 WL 6069156, at *2 (S.D. Cal. Jan. 16, 2024) (finding the plaintiff was "without recourse" when the defendant's counsel withdrew and defendant "failed to retain [replacement] counsel"). So, the first *Eitel* factor weighs in favor of default judgment.

**B.      Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint**

"Of all the *Eitel* factors, courts often consider the second and third factors to be 'the most important.'" *Mohanna v. Bank of Am., N.A.*, No. 16-CV-01033-HSG, 2017 WL 976015, at *3 (N.D. Cal. Mar. 14, 2017) (citations omitted).  Courts frequently analyze these factors—"the merits of the plaintiff's substantive claims and the sufficiency of the plaintiff's complaint"— together.  *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). "The issue here is whether the allegations in the complaint are sufficient to state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  "[T]he factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Perplexity counterclaims for cancellation of PSSI's '290 Registration.  "Cancellation of [a trademark] registration is proper 'when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing.'" *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 348 (9th Cir. 1984) (quoting *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091 (Fed. Cir. 1984)).

**1.      Grounds for Cancellation**

Perplexity seeks to cancel PSSI's '290 Registration because it (1) "was obtained fraudulently," 15 U.S.C. § 1115(b)(1), and (2) "has been abandoned," 15 U.S.C. § 1064(3).

**a.      Fraud**

"To succeed on a claim for cancellation based on fraud, [the plaintiff] must adduce evidence of (1) a false representation regarding a material fact; (2) the registrant's knowledge or

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) (citation omitted). "A false representation in the original trademark application . . . may be grounds for cancellation if all five requirements are met." *Id.* (citation omitted).

### i.      False Representation Regarding a Material Fact

Perplexity alleges PSSI applied to register the Leaf Logo as a "trademark used in commerce," 15 U.S.C. § 1051(a), and therefore needed to declare the Leaf Logo was in use in commerce and provide a specimen showing such use. (Dkt. No. 23 at 20-21.) *See* 15 U.S.C. § 1051(a)(3)(C) ("The statement shall . . . specify that . . . the mark is in use in commerce."). According to Perplexity, because PSSI "was not using the Leaf Logo to offer any goods or services," its declaration the Leaf Logo was in use in commerce was false. (Dkt. No. 23 at 22-23.) In addition, its specimen "purporting to show the Leaf Logo in use" was "fraudulent" because it "did not show the mark being used with any actual goods or services—let alone the applied-for services in the application." (*Id.*) So, Perplexity has alleged PSSI's false representation in its trademark application.

And, because statements and a specimen regarding use in commerce are required for trademark applications based on actual use, Perplexity has alleged "PSSI's fraudulent statements were material." (*Id.* at 23.) *See Impossible Foods Inc. v. Impossible X LLC*, No. 21-CV-02419-BLF (SVK), 2025 WL 1810263, at *3 (N.D. Cal. June 30, 2025) (agreeing "whether a mark is in use as to each good and service covered in an application or registration is material because a mark will not be registered or maintained without proof of use" (quotation marks and citation omitted)); *see also OpenAI, Inc. v. Open Artificial Intelligence, Inc.*, 791 F. Supp. 3d 1106, 1115 (N.D. Cal. 2025) ("Submitting a false specimen to the USPTO is a material misrepresentation."). So, Perplexity alleges PSSI's false representation of a material fact in its trademark application.

### ii.      Knowledge of Falsity

Perplexity alleges PSSI "knew that its website was not functional and did not contain any

actual content, and that it was not using the Leaf Logo to offer any goods or services," and so "knew that it was making fraudulent statements to the USPTO." (Dkt. No. 23 at 23.) Given the Court's entry of default, Perplexity's allegations about PSSI's knowledge of its statements' falsity are "deemed true." *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (noting allegation of "willful infringement" is "deemed true"); *see also CBS Studios, Inc. v. Desilu Studios, Inc.*, No. CV 18-09309 AG (Ex), 2019 WL 4138657, at *3 (C.D. Cal. May 6, 2019) (following default, accepting as true allegations that "Defendants fraudulently registered the Infringing Mark by submitting false documents and statements to the USPTO"). So, Perplexity has alleged PSSI knew its statements were false.

### iii.    Intent to Induce Reliance

Perplexity alleges because PSSI was required to show the Leaf Logo's use in commerce before its application could be granted, its false statements regarding such use were made "with the intent that the USPTO would rely on them in processing its application for the Leaf Logo." (Dkt. No. 23 at 23.) Even if circumstantial, such allegations are sufficient for Perplexity to allege PSSI's intent to induce the USPTO's reliance on its statements. *See OpenAI, Inc.*, 791 F. Supp. 3d at 1117 ("In trademark cases, because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence." (quotation marks and citation omitted)).

### iv.    Actual, Reasonable Reliance

Perplexity alleges "[t]he USPTO relied on PSSI's fraudulent statements when issuing the registration; indeed, had PSSI not made those fraudulent statements, the USPTO would never have issued the registration." (Dkt. No. 23 at 24.) *See Horgan v. Iragorri*, No. 13-CV-06099 DSF (JCGx), 2014 WL 12607675, at *2 (C.D. Cal. Jan. 7, 2014) (finding "effect of inducing the USPTO's reliance on" statement "which was necessary for the registration of the Mark" (citing 14 U.S.C. § 1051(d)(1))). Because PSSI's allegedly false statement was necessary for the USPTO to grant registration, Perplexity has alleged the USPTO's reliance.

### v.    Damages

Perplexity alleges damages because PSSI, "in an effort to gain a payday," has asserted the

United States District Court
Northern District of California

'290 Registration and the Leaf Logo's "entitle[ment] to legal presumptions of validity, ownership, and exclusivity of use in the United States . . . in this lawsuit." (Dkt. No. 23 at 33.) *See Pocketbook Int'l SA v. Domain Admin/Sitetools, Inc.*, No. 20-CV-8708-DMG (PDx), 2021 WL 6103078, at \*3 (C.D. Cal. Oct. 19, 2021) ("Defendants have allegedly suffered damage based on Plaintiff's attempts to enforce the validity of its mark, including being forced to defend themselves in . . . this litigation."); *see also La Canada Ventures, Inc. v. MDalgorithms, Inc.*, No. 22-cv-07197-RS, 2024 WL 40205, at \*5 (N.D. Cal. Jan. 3, 2024) (party sufficiently alleged "the fifth element" by "stat[ing] it suffered damages as a result of Plaintiff's deception of the USPTO").

So, Perplexity has alleged the five elements to show valid grounds for cancellation through a false representation in PSSI's trademark application.

### b.      Abandonment or Non-Use

"To show abandonment through non-use, the party claiming abandonment must allege the trademark owner's (1) 'discontinuance of trademark use' and (2) 'intent not to resume such use.'" *Mophie, Inc. v. ABM Wireless, Inc.*, No. 14-SACV-1422-JLS (RNBx), 2015 WL 12791374, at \*3 (C.D. Cal. May 19, 2015) (quoting *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 935 (9th Cir. 2006)). "The phrase 'trademark use' means 'the bona fide use of the mark in the ordinary course of trade, and not merely to reserve a right in a mark." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014) (citation omitted). "Intent not to resume may be inferred from circumstances." *See* 15 U.S.C. § 1127.

As to PSSI's discontinuance of trademark use, Perplexity alleges PSSI has ***never*** used the Leaf Logo on its website or social media accounts for a *bona fide* offering of goods or services. *Cf. Electro Source, LLC*, 458 F.3d at 938 ("Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." (quotation marks and citation omitted)). Perplexity also alleges PSSI's intent not to resume use of the Leaf Logo through allegations PSSI replaced the Leaf Logo with the P Logo while rebranding its website and social media accounts. *Cf. Wells Fargo & Co.*, 758 F.3d at 1072 (reversing district court's finding of abandonment based on rebranding because the plaintiff continued to use the mark in trade); *see also U-Haul Int'l Inc. v. Public Storage Operating Co.*, No. 24-CV-03160-PHX-MTL, 2025 WL

2531546, at *15 (D. Ariz. Sept. 3, 2025) (distinguishing *Wells Fargo & Co.* and finding abandonment because the complaint alleges the defendant "has already rebranded away from the . . . mark in favor of a new one").

So, Perplexity has alleged grounds for cancellation based on PSSI's abandonment of the Leaf Logo.

### 2.     Perplexity's Standing

"A petition to cancel a registration of a mark . . . may . . . be filed by any person who believes that he is or will be damaged by the registration of a mark." 15 U.S.C. § 1064. So, a petitioner "must show a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in his own mark." *Star-Kist Foods, Inc.*, 735 F.2d at 349; *see also id.* (citing examples including "a likelihood of confusion between the petitioner's mark and the registered mark at issue which is not wholly without merit, or a rejection of an application during prosecution" (cleaned up)).

In this case, PSSI sought damages from Perplexity based on alleged infringement of the '290 Registration trademark. Furthermore, Perplexity declares PSSI cited the '290 Registration in opposing Perplexity's pending applications to register its PERLEXITY trademark with the USPTO. (Dkt. No. 75-1 ¶ 10.) So, Perplexity "is more than an intermeddler but rather has a personal interest, and [] there is a real controversy between the parties." *See Star-Kist Foods, Inc.*, 735 F.2d at 349 (cleaned up); *see also Kleven v. Hereford*, No. 13-CV-02783, 2015 WL 4977185, at *20 (C.D. Cal. Aug. 21, 2015) ("A party can typically show standing if it has a pending or soon-to-be filed trademark registration application for a mark that has been or likely will be rejected on the basis of the challenged registrations.").

Because Perplexity's allegations are sufficient to state a claim for cancellation based on fraud or abandonment, and Perplexity has standing to seek cancellation, the second and third *Eitel* factors weigh in favor of default judgment.

### C.     Sum of Money at Stake

Under the fourth *Eitel* factor, courts should consider "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp.

United States District Court
Northern District of California

United States District Court
Northern District of California

2d 1172, 1176 (C.D. Cal. 2002); *see also Bd. of Trs. v. Core Concrete Constr., Inc.*, No. C 11-02532-LB, 2012 WL 380304, at \*4 (N.D. Cal. Jan. 17, 2012) ("When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged.").  Perplexity does not seek any money damages; instead, Perplexity asks the Court to cancel the '290 Registration.  So, this factor weighs in favor of granting default judgment.  *See CBS Studios, Inc.*, 2019 WL 4138657, at \*4 (granting default judgment when "CBS isn't seeking any money in this case, only permanent injunctive relief and cancellation of the Infringing Mark's trademark registration"); *see also Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 947 (N.D. Cal. 2017) (finding factor favored default judgment because "EFF seeks no money, and asks this Court only to declare its constitutional rights").

### D.    Possibility of Dispute as to Material Facts

The fifth *Eitel* factor examines the likelihood of the parties' dispute as to material facts surrounding the case.  *See Eitel*, 782 F.2d at 1471-72.  "Although [PSSI's] previous appearance in this action suggests there may have been some disputes between the parties, its subsequent failure to obtain new counsel to defend itself in this action 'swings the pendulum back toward entry of default judgment.'"  *See Maverick Bankcard, Inc.*, 2023 WL 12037766, at \*3 (citations omitted).  Furthermore, because "[Perplexity's] factual allegations are presumed true in this context . . . and [PSSI] ha[s] failed to defend [itself], no factual dispute exists that would preclude the entry of default judgement."  *United States ex rel. Macias v. Pac. Health Corp.*, No. 12-CV-00960 RSWL-JC, 2019 WL 2396305, at \*8 (C.D. Cal. June 5, 2019).  So, this factor weighs in favor of default judgment.

### E.    Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default is a result of excusable neglect.  *Eitel*, 782 F.2d at 1471-72.  "This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).  PSSI is undoubtably aware of this lawsuit, which it initiated and appeared in until its counsel's withdrawal.  PSSI is also aware of Perplexity's counterclaims, which it answered, and the instant

motion, which Perplexity has certified it served upon PSSI's former attorney.  *See Greenlight Sys., LLC v. Breckenfelder*, No. 19-CV-06658-EMC, 2021 WL 2651377, at \*9 (N.D. Cal. June 28, 2021) ("Counter-defendants were clearly aware of this lawsuit and their failure to litigate this matter is not based on excusable neglect."), *aff'd*, No. 21-16245, 2022 WL 17222415 (9th Cir. Nov. 25, 2022).  And in the months since the Court ordered PSSI to obtain counsel, PSSI "has not provided any excuses that would justify delaying this action further."  (Dkt. No. 70 at 5 (cleaned up).)  *See Solaria Corp. v. T.S. Energie e Risorse, S.R.I.*, No. 13-CV-05201-SC, 2014 WL 7205114, at \*3 (N.D. Cal. Dec. 17, 2014) ("There is no evidence in the record that Defendants' failure to appear by new counsel and otherwise defend was the result of excusable neglect.").  So, this factor weighs in favor of default judgment.

### F.    Policy Favoring a Decision on the Merits

The final *Eitel* factor typically weighs against default judgment because it favors a decision on the merits.  *Eitel*, 782 F.2d at 1472.  "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (cleaned up).  For example, "default judgment is appropriate where the defendant's failure to appear makes decision on the merits impossible."  *Macias*, 2019 WL 2396305, at \*9 (cleaned up); *see also Solaria Corp.*, 2014 WL 7205114, at \*3 ("While modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." (quotation marks and citation omitted)).  As the Court previously noted, PSSI's "inability to retain counsel and therefore to participate in this litigation  it initiated has made it impossible for [Perplexity] to adequately prepare itself for trial and litigate this case to its conclusion."  (Dkt. 70 at 5 (cleaned up).)  So, the seventh *Eitel* factor does not preclude entry of default judgment.

Because six of the seven *Eitel* factors weigh in favor of default judgment, entry of default judgment is appropriate.

### III.    RELIEF SOUGHT

Having determined the motion for default judgment should be granted, the Court considers the relief to which Perplexity is entitled.  Under Federal Rule of Civil Procedure 54(c), a "default

United States District Court<br>Northern District of California

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Perplexity seeks judgement against PSSI on its counterclaims and an order cancelling the '290 Registration. The Lanham Act provides "[i]n any action involving a registered mark the court may . . . order the cancelation of registrations, in whole or in part . . . with respect to the registrations of any party to the action." 15 U.S.C. § 1119. And, as explained above, Perplexity has alleged cancellation of the '290 Registration is proper. *See Star-Kist Foods, Inc.*, 735 F.2d at 348 ("Cancellation of [a trademark] registration is proper 'when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing.'" (citation omitted)). So, the Court orders cancellation of the '290 Registration.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Perplexity's motion for default judgment on its counterclaims. The Court also ORDERS the cancellation of U.S. Trademark Registration 6,906,290.

This Order disposes of Docket No. 75.

**IT IS SO ORDERED.**

Dated: January 23, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

14